## SMITH *v.* MARDEN.

A person pasturing another's milch cow for the season, in the usual manner, under an agreement with the owner, is so far intrusted with the animal as to have a statutory lien upon it for the charge of pasturing, as against the owner, and third person having no title or right of possession.

REPLEVIN, for a cow. Facts found by a referee. Mrs. Munroe, the owner of the animal, died September 30, 1879. The cow, then giving milk, was pastured by the plaintiff, in the manner in which milch cows are usually pastured, under the usual contract with the owner for the pasture season of that year—from May 20 to Octo-

ber 20. At the owner's death, the plaintiff took the cow into his possession, claiming a lien for the charge of pasturing; and the defendant took her from the plaintiff's premises.

*Leach & Stevens*, for the defendant. The plaintiff cannot maintain replevin unless he has a lien for pasturing. The case shows no other right in him, and he took the cow into his possession on that claim. The statute gives this action only to the "owner or person entitled to possession." G. L., c. 245, s. 2. It is sufficient defence to show property in a third person. It is immaterial whether the defendant has any title or not, provided the plaintiff has none. *Quincy* v. *Hall*, 1 Pick. 360; *Waterman* v. *Robinson*, 5 Mass. 303; *Reinheimer* v. *Hemingway*, 35 Penn. St. 432; *Taylor* v. *True*, 27 N. H. 220; 3 Chit. Pl. 1044; 2 Greenl. Evid., ss. 561, 563; 2 Saund. Pl. & Ev. 769; *Sanford M. Co.* v. *Wiggin*, 14 N. H. 441, 445. Agisters of cattle are entitled to no lien at common law, even when they have the exclusive care and custody of them. 3 Par. Cont. 251; *Goodrich* v. *Willard*, 7 Gray 183; *Cummings* v. *Harris*, 3 Vt. 245; *Clark* v. *Rideout*, 39 N. H. 242; *Wills* v. *Barrister*, 36 Vt. 224. Nor have stable-keepers, not inn-keepers, any lien on horses which they are employed to keep. 3 Par. Cont. 250; *Fox* v. *McGregor*, 11 Barb. 41; *Miller* v. *Marston*, 35 Me. 153; *Hickman* v. *Thomas*, 16 Ala. 666.

The statute gives no lien except to persons to whom cattle are "intrusted" to be pastured or boarded. G. L., c. 139, s. 2. Being in derogation of common law, the statute should be construed strictly. *Wendell* v. *Abbott*, 43 N. H. 68. To intrust is "to deliver in trust," "to confide to the care of," "to commit to another with confidence in his fidelity." Webster's Dict. Taking any of these definitions, the statute applies to that very large class of cases where stock, especially sheep, beef, and young cattle, are pastured by the season at a distance from the owner, and are under the care or custody of the owner of the pasture, and to a large class of cases where horses and other stock not wanted for use are intrusted to some person to board for the winter or some definite time, but does not apply to cases like the ordinary pasturing of milch cows, where the owner takes the cow into his possession every night to milk, drives it to and from pasture each day, gives it extra feed and salt when necessary, and, in fact, exercises all the care and custody over it that any one exercises during the whole season. The owner of milch cows and stock pastured in this way is held liable for all damage caused by them, upon the ground that they are in the legal possession of the owner, and under his general custody and control. *Noyes* v. *Colby*, 30 N. H. 154. And he is held to be the occupier of the close, and liable for damages caused by deficient fences. *Tewksbury* v. *Bucklin*, 7 N. H. 521; G. L., c. 142, s. 19. This construction makes the lien analogous in its requisites to a lien at common law. There was no evidence tending to show that the cow

was in any just sense intrusted to the care of the plaintiff. *Sàrgent* v. *Usher*, 55 N. H. 291. The statute, as originally passed, provided the lien should continue "until said person voluntarily relinquished the possession of said animals," affording a strong inference that the party claiming the lien must have the custody and possession of them. Laws 1863, *c.* 2734.

A lien for pasturing milch cows would be inconsistent with their use. The contract is invariably for pasturing from May 20 to October 20 of each year, with the right of the owner to enter the close each day, take the cow home to his barn each night and keep it till next morning, or as long as he chooses, and take all the income. Thus, by the contract, the owner has the exclusive care, custody, and possession of the animal more than half the time on his own premises, and its entire use. If the lien exists at all, it must be held to exist during the entire season, and, as a consequence, to give the party holding it the right to take exclusive possession at any time. Taking such possession at any time during the term would be in direct violation of the owner's right to use under such contracts. The contract is for the right to feed and use pasture land to a limited extent, and not to have specific property kept by the owner of the pasture. The hirer can have a different cow in the pasture each week or month under the contract, it being a contract to pasture a certain number of cows, and not specified ones. Suppose the hirer of pasturing for one milch cow should pasture a different one each week until October 1, and at the end of each week sell to a *bona fide* purchaser, and own none after October 1: upon which cow would the lien exist if not enforced till October 20? Suppose, further, that each cow, October 20, was in the pasture of some other person, who claimed to hold them for a lien: how could the holder of the prior lien enforce it? The statute was probably passed in consequence of the decisions in *Clark* v. *Rideout, supra,* and *Cross* v. *Wilkins,* 43 N. H. 332, in order to extend a lien to cases similar to those, and analogous in its requisites to liens at common law. A different construction would give rise to many controversies without merit, and encumber a large class of property in the actual, rightful custody and possession of the owner with an unrecorded lien. The statute prescribes that the lien shall exist " until all proper charges are paid or tendered." A purchaser of a milch cow, in the rightful, actual possession of the owner during the season, in order to be safe, would have to ascertain where the cow was pastured, and who owned the pasture, and get a release of the lien, or pay for the pasturing in advance.

No reported decision can be found in any jurisdiction giving a lien to the pasturer of milch cows. The only statute giving it, so far as we can find, being,—Laws of Maine, 1872, *c.* 27 ; 1873, *c.* 125. If the legislature had intended to include such cases, they would have adopted language similar to the Maine statutes : "Any person who pastures, feeds, or shelters animals " shall have a lien.

*Shirley & Carr*, for the plaintiff, cited *Young* v. *Kimball*, 23 Penn. St. 195; *Allen* v. *Ham*, 63 Me. 534.

DOE, C. J. The first section of the lien law (G. L., *c.* 139) gives a boarding-house keeper a lien upon the baggage of his guest, even if the baggage is, in a certain sense, in the constant possession of its owner, and although it is not continually in the house. Whatever may be the legal rights of any interested party when the baggage, or a part of it, carried out of the house by the boarder, in the usual or unusual course of his business, has been sold by him, or attached by his creditors, there may well be a lien of some kind as against the boarder, and third persons having no title or right of possession: and some right of lien the legislature intended to establish. There is no such constructive notice of the lien, for four, sixty, or ninety days, as in other cases under the lien law; but it was the purpose of the legislature to give a lien on the boarder's baggage, at least as against him and third persons having no title or right of possession, although, to some extent, the lien would generally be a shifting one. It is consistent with some change of apparel. It is adapted to the nature of the subject-matter, and the boarder's reasonable and expected use of his property. And there may as well be an unrecorded lien on a milch cow, pastured in the usual manner, as on a boarder's baggage, subject to his customary use.

If a purchaser or attaching creditor would have had no constructive notice of the plaintiff's lien, during the pasture season or any part of it, or afterwards, there is no reason why the plaintiff should have no lien, during that season, as against the defendant who has no interest in conflict with the plaintiff's. The daily right of the owner to take the cow from the pasture, for a usual and proper purpose, is as consistent with a lien, as the daily right of a boarder to carry various articles of his baggage from his boarding-house. In neither case did the legislature intend to withhold all security from the creditor, or to deprive the debtor of all possession and use of his property.

Mrs. Munroe was not the tenant or occupant of the plaintiff's pasture. By their contract he assumed some obligation in regard to the sufficiency of the fence. And there is no authorized distinction on which it can be held that the plaintiff was not a person to whom the cow was "intrusted to be pastured," within the meaning of the law. The statute does not expressly exclude a lien when the contract is to pasture or board an animal a month, a week, a day, or parts of successive days, or when the owner is to have the use and possession of it a part of every day; and there is not satisfactory evidence of an intent to leave the creditor, in such cases as this, without equitable security. There is no question between the plaintiff and Mrs. Munroe's administrator. It does not appear that there is an administrator, or that the plaintiff infringed

any one's right by taking the cow into his possession, at the death of the owner, before the end of the pasture season.   From his possession, the defendant took the cow without right.   However qualified the plaintiff's lien may be, it is a security which the defendant cannot dispute.   The plaintiff did not relinquish the possession to which, by virtue of his lien, he was entitled as against the defendant.

*Judgment for the plaintiff.*

STANLEY and BLODGETT, JJ., did not sit: the others concurred.